UNION INS. CO. OF PHILADELPHIA *v.* THE BRIDGEPORT and THE WILLIAM BURROWS.[1]

POTTS *et al. v.* SAME.

POTTS *v.* SAME.

*(District Court, E. D. New York.* May 31, 1887.*

1. COLLISION—SIGNAL—HELL GATE.
    It is no fault in a steam-boat bound west through Hell Gate on a flood-tide to take the east channel, after giving one signal to a tow coming up through that channel.
2. SAME.
    A tug, going with a tow, by night, through the east channel of Hell Gate towards the Sound on a flood-tide, answered the one signal of an approaching steam-boat with one whistle. But, assuming that the steam-boat intended to go around by the west channel, the tug did not keep to the starboard side of the east channel, and the steam-boat, turning into that channel, struck and sunk one of the boats of the tow. *Held,* that the failure of the tug to go to the starboard side of the channel after her one whistle was the fault which caused the collision '

[1]Reported by Edward G. Benedict, Esq., of the New York bar.

In Admiralty.

Libels by the insurance company, which had paid the loss on the canal-boat sunk through the collision in this case, and by the owners of the cargo on board of her, against the steam-boat Bridgeport, for negligence causing the said collision. The tug was made a party defendant by the steam-boat, under the fifty-ninth admiralty rule.

*Carpenter & Mosher*, for Union Insurance Company.

*Sydney Chubb*, for Potts.

*Benedict, Taft & Benedict*, for the Bridgeport.

*E. G. Davis*, for the William Burrows.

BENEDICT, J. It is proved that, for a vessel bound to the westward through the Gate, two courses are open on reaching the Hog's Back. One is to keep on and pass through the main ship channel by Mill rock, the other to turn sharp and pass between Flood rock and the Long Island shore. The single whistle which the Bridgeport gave the tow, therefore, was not notice to the tug that it was the intention of the steam-boat to take the main ship channel, but only that the steam-boat intended to pass the tug on the tug's port side. It was no fault, therefore, for the Bridgeport to take the east channel; and the assumption of the master of the tug that the Bridgeport would take the main channel, was not justified. The course pursued by the Bridgeport after she turned to take the east channel was proper, for she kept a course that would carry her as close to Flood rock as she could safely go. The course of the tug, stated in her pleadings, is bearing over to the starboard from the time she replied to the whistle of the Bridgeport; and the pleadings assume that it was her duty to do this, but it is quite evident that this duty was not discharged. The fact, no doubt, was that the pilot of the tug, assuming, as he says he did, that the Bridgeport would take the ship's channel, did not port his helm until he saw the Bridgeport entering the east channel; then it was that he put his helm hard a-port, but then it was too late. The omission on the part of the tug to put her helm to port, and work over to east, upon replying to the Bridgeport's signal, as could have been done, was a fault, and the fault which caused the collision. The decree must therefore be that in the case of the *Union Insurance Company of Philadelphia, Libelant*, and also in the case of *Frederick Potts et al., Libelants*, the libelants recover their damages of the tug William Burrows, and the libels as against the steam-boat Bridgeport be dismissed, with costs.